Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00C 8202 | **DATE** | 3/4/2002 |
| **CASE TITLE** | HOUSEHOLD FINANCIAL SERVICES, INC. vs. TITLE WEST MORTGAGE | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for summary judgment as to Title West's liability [23-1] is hereby granted. Enter memorandum opinion and order. A hearing as to the specific relief and any other damages and costs is set for 3/11/02 at 10:00 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| ✓ | Notified counsel by telephone. | | MAR 05 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 33 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOUSEHOLD FINANCIAL SERVICES, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>TITLE WEST MORTGAGE, INC., a California Corporation,<br><br>Defendants. | No. 0DC 8202<br>Judge Ronald A. Guzman<br><br>DOCKETED<br>MAR 0 5 2002 |

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiff Household Financial Services, Inc.'s ("Household") partial motion for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below the motion is granted.

A. <u>The Loan Purchase Agreement.</u>

Household and Title West Mortgage, Inc. ("Title West") entered into the Loan Purchase Agreement on or about December 22, 1999. The Loan Purchase Agreement set forth all of the terms and conditions under which Household would purchase loans from Title West.

Under Section 4.3(c) of the Loan Purchase Agreement, Title West represented and warranted with respect to each loan it would sell to Household, including each of the loans at issue in the Complaint, that the "Borrower has made, or shall make, as the case may be, the first

1

monthly payment with respect to the Loan on its Due Date..."The Loan Purchase Agreement defines the term "Due Date" as "the day of the month on which each Monthly Payment is due on a Loan, exclusive of any days of grace."

Under Section 4.2(b) of the Loan Purchase Agreement, Title West further represented and warranted, with respect to each loan it would sell to Household under the Loan Purchase Agreement, including each of the loans at issue in the Complaint, that "the documents, instruments and agreement submitted for loan underwriting were not falsified and contain no untrue statement of material fact and do not omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading." Similarly, under Section 4.3(1) of the Loan Purchase Agreement, Title West represented and warranted, with respect to each loan it would sell to Household under the Loan Purchase Agreement, including each of the loans at issue in the Complaint, that:

> The note and the Mortgage and every other agreement, if any, executed and delivered by the Obligor in connection with the Loan are genuine... and the Note, the Mortgage and each other such related agreement have been duly and properly executed by the respective Obligors. Seller has reviewed all of the documents constituting the Mortgage File [as that term is defined in the Loan purchase Agreement] and has made such inquiries as it deems necessary to make and confirm the accuracy of the representation set forth herein.

(Pl. Rule 56.1 Stmt. at ¶ 9).

The Loan Purchase Agreement also clearly provided for Household's right and remedies against Title West in the event that Title West breached any of the representations or warranties it made in the Loan Purchase Agreement. Specifically, in Section 9.1 of the Loan Purchase Agreement, Title West agreed:

2

> (a) In the event ...(ii) [Title West] has, with respect to any Loan, breached any warranty, representation, or agreement contained in his Agreement....[ Household] shall give [Title West] notice of, and shall request that [Title West] cure, such failure, breach, or action within such 30-days period, [Title West] shall, not later than 30 days after its receipt of notice thereof, repurchase such Loan at the Repurchase Price set forth in Section 9.2.

(Pl. Rule 56.1 Stmt. at ¶ 10). And. Section 10.1 of the Loan Purchase Agreement states:

> "(a) [Title West] agrees to indemnify ....[Household].... from and to reimburse them for, any loss, cost, expense, damage, liability, or claim (including, without limitation, all Legal Fees) relating to, arising out of, based upon, or resulting to, arising out of, based upon, or resulting from:
> ....(ii) [Title West's] breach of any of its representations and warranties contained in this Agreement; or (iii) [Title West's] breach of or failure to perform any of its covenants or agreements contained in or made pursuant to this Agreement."

Pl. Rule 56.1 Stmt. at ¶ 11).

On December 31, 1999, under pursuant to the Loan Purchase Agreement, Household purchased a group of loans from Title West including the Butler Loan, the Smith Loan, the Strasburg Loan, the Anderson Loan, Simms Loan I, Simms Loan II, Cooney Loan I, and Cooney Loan II. (Pl. Rule56.1 Stmt. ¶ 12, 18, 24, 30, 44, and 55).

**B.    The First Payment Default Loans.**

The borrowers on the Butler Loan, the Smith Loan, the Strasburg Loan, the Anderson Loan, Cooney Loan, and Cooney Loan II (collectively, the "First Payment Default Loans") did not make their respective first payment in their loans on or before the date such payments were due. (Pl. Rule 56.1 Stmt. at ¶¶ 13-15, 19-21, 25-27, 31-33, and 56-58). Pursuant to Section 9.1 of the Loan Purchase Agreement. Household notified Title West in writing of the first payment

3

default with respect to the First Payment Default Loans and requested Title West to repurchase each the First Payment Default Loans in accordance with the formula set forth in Section 9.2 of the Loan Purchase Agreement. (Pl. Rule 56.1 Stmt. at ¶¶ 16, 22, 28, 41and 63). Title West received Household's repurchase requests with respect to the First Payment Default Loans. (Id.). Nevertheless, Title West filed and refused either to repurchase the First Payment Default Loans from Household or to indemnify Household for the damages, expenses, costs and fees it has incurred in relation to the First Payment Default Loans. (Pl. Rule 56.1 Stmt. at ¶¶ 17, 23, 29,43, and 69).

## C. The False Statement Default Loans.

As set forth in greater details below, the Loan Documents pertaining to the Anderson Loan, Simms Loan I, Simms Loan II, Cooney Loan II (collectively, the "False Statement Default Loans") also contained false or inaccurate statement of material fact. (Pl. Rule 56.1 Stmt. at ¶¶ 34, 45 and 59).

### 1. The Anderson Loan.

Elaine Anderson ("Anderson"), the purported borrower on the Anderson Loan, has stated under penalty of perjury in a declaration submitted herewith (the "Anderson Declaration") that, although her name, social security number and home telephone number appear on the Uniform Residential Loan Application (the "Anderson Application") with respect to the Anderson Loan: (a) she had never seen the Anderson Application before Household showed it to her in August 2001: (b) the other information listed on the Anderson Application is false (as it pertains to her) and was false at the time the Anderson Application purports to have been executed; and (c) the

4

signature on the Anderson Application is not hers and was not made with her knowledge or consent. (Pl. Rule 56.1 Stmt. at ¶¶ 35-36).

Anderson also states in the Anderson Declaration that, although her name and what purports to be her signature appear on the promissory note (the "Anderson Note") and the security deed (the "Anderson Deed") Pertaining tot eh Anderson Loan, both of which were included among the Loan Documents relating to the Anderson Loan: (a) she never had seen the Anderson Note or the Anderson Deed before Household showed them to her in August 2001; and (b) the signatures appearing on the Anderson Note and the Anderson Deed are not hers and were not made with her knowledge or consent. (Pl. Rule 56.1 Stmt. at ¶ 37).

In addition, Title West conducted its own, independent investigation regarding the Anderson Loan and concluded that "the [ b]orrower appears to be a victim of identity theft. Her job and current residence address were falsified for the purpose of the loan." (Pl. Rule 56.1 Stmt. at ¶¶ 38-40). Moreover, Title West has since testified that it finds the false and/or inaccurate statements and false signatures contained in the Lone Documents pertaining to the Anderson Loan to be material. (Pl. Rule 56.1 Stmt. at ¶ 42).

Pursuant to Section 9.1 of the Loan Purchase Agreement, Household requested Title West to repurchase the Anderson Loan in accordance with the formula set forth in Section 9.2 of the Loan Purchase Agreement. (Pl. Rule 56 Stmt. at ¶ 41). Title West received Household's repurchase request with respect to the Anderson Loan. (Id.) Nevertheless, Title West has failed and refused either to purchase the Anderson Loan from Household or to indemnify Household for the damages, expenses, costs and fees it has incurred in relation to the Anderson Loan. (Pl. Rule 56 Stmt. at ¶ 43).

5

2. **The Simms Loans.**

Robin Simms ("Simms"), the borrower on the Simms Loans, states under penalty of perjury in a declaration submitted herewith (the "Simms Declaration") that: (a) although the Uniform Residential Loan Applications (the "Simms Applications") pertaining to the Simms Loans purport to have been completed by her in November 2000, she never had seen those documents before Household showed them to her in or about October 2001; and (b) the signatures and initials on the Simms Applications, which purport to be hers, are not hers. (Pl. Rule 56 Stmt. at ¶ 47). Simms further declares in the Simms Declaration that, although she executed an occupancy rider in which she expressed her intention to reside in the property that is the subject of the Simms Loans as her primary residence, she never intended to, and never did, reside in the property as her primary residence. (Pl. Rule 56.1 Stmt. at ¶ 48).

In addition, as it did in connection with the Anderson Loan, Title West conducted its own, independent investigation regarding the Simms Loans and concluded, among other things, that "the borrower's employment period was misstated, documents falsified to show time with company when borrower was not an employee". (Pl. Rule 56.1 Stmt. at ¶¶ 50-52). Moreover, Title West has since testified that it finds the false and/or inaccurate statements and false signatures contained in the Loan Documents pertaining to the Simms Loans to be material. (Pl. Rule 56.1 Stmt. at ¶ 53).

Pursuant to Section 9.1 of the Loan Purchase Agreement, Household requested Title West to repurchase the Simms Loans in accordance with the formula set forth in Section 9.2 of the Loan Purchase Agreement. (Pl. Rule 56 Stmt. at ¶ 49). Nevertheless, Title West has filed and refused either to repurchase the Simms Loans from Household or to indemnify Household for the

6

damages, expenses, costs and fees it has incurred in relation to the Simms Loans. (Pl. Rule 56 Stmt. at ¶ 54).

### 3. The Cooney Loans.

In the Uniform residential Loan Applications submitted in relation to Cooney Loans I and II, both of which are Loan Documents, the borrower represented that she had resided at the address listed therein for four years as of the date she completed those applications. (Pl. Rule 56.1 Stmt. at ¶¶ 60-61). However, the other Loan Documents pertaining to Cooney Loans I and II list for other addresses for the borrower on the Cooney Loans during that same time period. (Pl. Rule 56.1 Stmt. at ¶ 62). Here again, Title West conducted its own independent investigation regarding the Cooney Loans and concluded that "[n]othing in the file that has been able to be verified has been found to be accurate. It appears that everything from the borrower's employment status to her current residence to the real estate owned has been misrepresented in this loan." (Pl. Rule 56.1 Stmt. at ¶ 64-65, 67). Specifically, Title West concluded, based upon its own investigation, that the borrower on the Cooney Loans misrepresented her employment status, her existing debt, her place of residence. (Pl. Rule 56.1 Stmt. at ¶ 66). Moreover, Title West has since testified that it finds the false and/or inaccurate statements contained in the Loan Documents pertaining to the Cooney Loans to be material. (Pl. Rule 56.1 Stmt. at ¶ 68).

Pursuant to Section 9.1 of the Loan Purchase Agreement, Household requested that Title West repurchase the Cooney Loans in accordance with the formula set forth in Section 9.2 of the Loan Purchase Agreement. (Pl. Rule 56 Stmt. at ¶ 63). Title West received Household's repurchase request to the Cooney Loans. (Id.) Nevertheless, Title West has failed and refused either to repurchase the Cooney Loans from Household or to indemnify Household for the

7

damages, expenses, costs and fees it has incurred in relation to the Cooney Loans. (Pl. Rule 56 Stmt. at ¶ 69).

## DISCUSSION

### A. Applicable Legal Standards.

Summary judgment is appropriate where there are no issues of material facts and the moving party is entitled to judgment as a matter of law. *Liu v. T & H Machine, Inc.*, 191 F.3d 790, 794 (7th Cir. 1999)(citing *Lexington Ins. Co. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999). Once a motion for summary judgment has been filed, "the burden shift to the non-moving party to show through specific evidence that a triable issue of fact remains..... The mere existence of some dispute will not defeat an otherwise properly supported motion for summary judgment." *Liu.* 191 F.3d at 796 (citing *Vector-Springfield Properties, Ltd. v. Central Illinois Light Co., Inc.*, 108 F.3d 806, 809 (7th Cir. 1999).

The non-moving party "must present more than mere speculation or conjecture to defeat a summary judgment motion." *Liu,* 191 F.3d at 796 (citing *Syborn Transition Corp., v. Security Ins. Co. of Hartford.* 107 F.3d 1250, 1255 ((7th Cir. 1997 ). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient to show a genuine issue of material fact." *Liu,* 191 F.3d at 796 (citing *Weeks v. Samsung Heavy Indus. Co., Ltd.,* 126 F.3d 926, 933 (7th Cir.1997). Moreover, "the evidence relied upon must be 'competent evidence of a type otherwise admissible at trial..... a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment.'" *Benedict v. Eau Claire Pub. Schools,* 1998 WL 60374, No. 97-2513 at *4 (7th Cir. Feb. 10,1998 ). (quoting *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 562 ((7th Cir. 1996).

8

A dispute about a material fact is genuine only if a reasonable jury could render a verdict for the non-moving party 'if the record at trial were identical to the record complied in the summary judgment proceeding.'" *Vanasco v. National-Louis University*, 137 F.3d 962, 965 (7th Cir.1998). (quoting *Griffin v. city if Milwaukee*, 74 F.3d 824, 827 (7th Cir. 1996). *See also Liu*, 191 F.3d at 796 (citing *Weeks*, 126 F.3d at 933). In light of the undisputed facts set forth supra and in its Statement of Undisputed Facts Pursuant to Local Rule 56.1(a)(3) submitted herewith, household is entitled to summary judgment with respect to Title West's repurchase and indemnification obligations with respect to each of the First Payment Default Loans and False Statement Default Loans.

Local Rule 56.1(a)(3) requires defendant, the moving party, to submit a statement of undisputed facts complete with citations to the record. Title West the nonmoving party is required, under Local Rule 56.1(b)(3), to respond to each numbered paragraph in the Household's statement of undisputed facts with the reason for his disagreement with each fact, if any, and provide supporting references to the record. The consequence of not adhering to Local Rule 56.1(b)(3) is that "[a]ll material facts set forth in the statement required of the moving party will be deemed admitted." Local Rule 56.1(b)(3)(B). In this case, because Title West has failed to file a statement disputing the United State's facts, as well as a response to Household's motion for summary judgment we deem Household's facts admitted. Local Rule 56.1(b)(3)(B).

As set forth in Household's Statement of Undisputed Facts pursuant to Local Rule 56.1(a)(3), the following facts are undisputed: (1) Household purchased the First Payment Default Loans and the False Statement Loans from Title West pursuant to the Loan Purchase Agreement; (2) none of the borrowers on the First payment Default Loans (i.e., the Butler Loan,

9

the Smith Loan, the Anderson Loan, Cooney Loan II) made their respective first payments on their loans on or before the date such payments were due; (3) the Loan Documents pertaining to each of the False Statement Default Loans (i.e., the Anderson Loan, Simms Loan I, Simms Loan II, Cooney Loan I and Cooney Loan II) contain material false and/or inaccurate statements, omission of material fact and/or false signatures, (4) Household requested Title West to repurchase the First Payment Default Loans and False Statement Default Loans as a result of Title West's breach of its representations and warranties with respect to those loans; and (5) Title West has neither repurchased the First Payment Default Loans or False Statement Default Loans nor indemnified Household for the losses, costs, expenses or damages it has incurred as result not only of Title West's breach of its representations and warranties, but also due to Title West's failure to perform its covenants under the Loan Purchase Agreement with respect to those loans.

The failure of the borrowers on the First Payment Default Loans to make their first payments on a timely basis constitutes a breach, by Title West, of the representations and warranties set forth in Section 4.3(c) of the Loan Purchase Agreement. The inclusion, in the Loan Documents pertaining to the False Statement Default Loans, of material false and/or inaccurate statements, omissions of material fact and/or false signatures constitutes a breach, by Title West, of its representations and warranties set forth in Sections 4.2(b) and 4.3(l) of the Loan Purchase Agreement.

Furthermore, the contractual remedies provided in the Loan Purchase Agreement for any breach by Title West of its representations and warranties with respect to any loan it has sold to Household are clear and unambiguous: (1) Pursuant to Section 9.1 of the Loan Purchase Agreement Title West must repurchase that loan from Household at a price calculated according

10

to the formula set forth in Section 9.2 of the Loan Purchase Agreement; and (2) Pursuant to Section 10.1 of the Loan Purchase Agreement. Title West must indemnify Household for any loss, cost, expense, damage, liability, or claim (including, without limitation, attorneys' fees) it incurs relating to, arising out of, based upon, or resulting from Title West's breach of any of its representations and warranties or failure to perform any of its covenants or agreements.

Based on Title West's failure to respond to Household Financial Services's motion for summary judgment, this court accepts as undisputed Household's assertion that Title West breached its representation and warranties with respect to each of the loans, and refused to repurchase the loans as required under the Loan Purchase Agreement. Accordingly, summary judgment is granted in favor of Household. A hearing as to the specific relief and any other damages and costs is set for Monday, March 11th at 10:00a.m.

## CONCLUSION

For the reasons set forth above Household's motion for summary judgment as to Title West's liability is hereby granted. (#23-1).

SO ORDERED                                           ENTERED: 3/4/02

*[signature]*

HON. RONALD A. GUZMAN
United States Judge